Citation Nr: 1607902 
Decision Date: 02/29/16 Archive Date: 03/04/16

DOCKET NO. 99-16 765 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in San Juan, the Commonwealth of Puerto Rico


THE ISSUES

1. Entitlement to an initial evaluation in excess of 60 percent for a lumbosacral spine disorder, since February 27, 2001.

2. Entitlement to an initial evaluation in excess of 10 percent for a left knee disability.


REPRESENTATION

Appellant represented by: Vietnam Veterans of America


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

W. H. Donnelly, Counsel


INTRODUCTION

The Veteran served on active duty with the United States Army from July 1975 to August 1992; he was additionally a member of the Army National Guard from May 1993 to July 1996.

These matters come before the Board of Veterans' Appeals (Board) on appeal from April 2000 and April 2006 decisions by the San Juan, Puerto Rico, Regional Office (RO) of the United States Department of Veterans Affairs (VA). 

The April 2000 decision granted service connection for a low back disability and assigned a 40 percent rating effective from November 30, 1998. The Veteran appealed the evaluation, and in an April 2001 decision the RO assigned an increased 60 percent rating from February 27, 2001. The Veteran continued his appeal with regard to both evaluation stages, and in a February 2008 decision, the Board denied a rating in excess of 40 percent prior to April 6, 2000; and granted an increased 60 percent rating, but no higher, from April 6, 2000, to February 27, 2001. The determinations as to these stages are final; only the evaluation from February 27, 2001, onward remains on appeal. 38 U.S.C.A. § 7103; 38 C.F.R. § 20.1100.

In an April 2006 decision, the RO granted service connection for a left knee disability, to include post-surgical meniscal damage, anterior cruciate ligament (ACL) repair, degenerative joint disease (DJD), and patellofemoral dysfunction, and assigned a 10 percent rating effective from November 30, 1998. 

In June 2003, the Veteran testified at a personal hearing held at RO before an Acting Veterans Law Judge (AVLJ); a transcript of that hearing is of record. In November 2007 correspondence, the Board notified the Veteran that the AVLJ was no longer employed by the Board and could not participate in any decision on the appeal, as required by law. 38 U.S.C.A. § 7107; 38 C.F.R. § 20.707. The Veteran was therefore offered an opportunity for a new hearing, which he declined.

These matters have been previously remanded by the Board a number of times, in December 2004, February 2008, October 2009, and January 2012. The issues remaining on appeal, titled above, are now returned to the Board for adjudication.


FINDINGS OF FACT

1. There is no ankylosis of the spine in any segment at any time during the appellate period, nor is there a showing of spinal cord involvement, bedridden status, or a need for long leg braces.

2. At all times during the appellate period, the service-connected left knee disability has included meniscal-associated pathology manifested by frequent episodes of pain, locking, and effusion of the joint.

3. No instability of the left knee joint is shown at any time during the appellate period.

4. Throughout the appellate period, the left knee disability has been manifested by no worse than limitation of motion in flexion to 90 degrees, with pain, weakness, and a lack of endurance with use, and x-ray evidence of severe DJD.

5. The overall disability picture presented does not support a finding of chronic limitation of extension.


CONCLUSIONS OF LAW

1. The criteria for an initial evaluation in excess of 60 percent for a lumbosacral spine disability are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.71a, Diagnostic Codes 5293, 5285 (2002); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5243 (2015).

2. The criteria for an initial evaluation in excess of 10 percent for left knee DJD with limitation of flexion are not met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Codes 5003, 5010, 5260 (2015).

3. The criteria for a separate initial 20 percent rating for left knee meniscal damage are met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. §§ 3.321, 4.1, 4.3, 4.7, 4.40, 4.45, 4.59, 4.71a, Diagnostic Code 5258 (2015).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126; 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a). 

This appeal arises from the Veteran's disagreement with the initial evaluations following the grants of service connection for low back and left knee disabilities. Once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). No additional discussion of the duty to notify is therefore required.

VA also has a duty to assist the Veteran in the development of the claim, which is not abrogated by the granting of service connection. This duty includes assisting the Veteran in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159. 

The Veteran's service treatment records, VA medical treatment records, and private treatment records have been obtained. 38 U.S.C.A. § 5103A, 38 C.F.R. § 3.159. The Veteran's Social Security Administration (SSA) disability determination, and the records considered in that determination, were obtained. 38 C.F.R. § 3.159(c)(2). 

Multiple VA examinations have been afforded the Veteran; examiners have generally made all clinical findings necessary to application of the appropriate rating criteria. Where any one examiner has failed to conduct specific testing or make a necessary finding, such deficiency has bene remedied by a subsequent examination. 38 C.F.R. § 3.159(c) (4); Barr v. Nicholson, 21 Vet. App. 303, 307 (2007). The examinations are adequate for adjudication.

At the Veteran's June 2003 hearing, the presiding AVLJ discussed the elements of each of the claims on appeal, to include identifying the types of evidence and information which would be of assistance in substantiating them. Additionally, the Veteran was offered an opportunity to ask the undersigned questions regarding his claim. 38 C.F.R. § 3.103(c)(2); Bryant v. Shinseki, 23 Vet. App. 488 (2010). The Board would additionally note that the Veteran has declined an opportunity for a second Board hearing.

There is no indication in the record that any additional evidence, relevant to the issues decided, is available and not part of the claims file. See Pelegrini v. Principi, 18 Vet. App. 112 (2004). As there is no indication that any failure on the part of VA to provide additional notice or assistance reasonably affects the outcome of the case, the Board finds that any such failure is harmless. See Mayfield v. Nicholson, 20 Vet. App. 537 (2006); see also Dingess/Hartman, 19 Vet. App. at 486; Shinseki v. Sanders/Simmons, 129 S. Ct. 1696 (2009). 

Analysis

In evaluating the severity of a particular disability, it is essential to consider its history. 38 C.F.R. § 4.1; Peyton v. Derwinski, 1 Vet. App. 282 (1991). Where entitlement to compensation has already been established and an increase in the disability rating is at issue, the present level of disability is of primary importance. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Separate ratings may be assigned for separate periods of time based on the facts found, however. This practice is known as "staged" ratings." Fenderson v. West, 12 Vet. App. 119, 126-127 (1999); Hart v. Mansfield, 21 Vet. App. 505 (2007). 

If the evidence for and against a claim is in equipoise, the claim will be granted. A claim will be denied only if the preponderance of the evidence is against the claim. See 38 U.S.C.A. § 5107 (West 2002); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49, 56 (1990). Any reasonable doubt regarding the degree of disability should be resolved in favor of the claimant. 38 C.F.R. § 4.3. Where there is a question as to which of two evaluations shall be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that evaluation. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

Disability evaluations are determined by the application of the facts presented to VA's Schedule for Rating Disabilities (Rating Schedule) at 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and the residual conditions in civilian occupations. 38 U.S.C.A. § 1155; 38 C.F.R. §§ 3.321(a), 4.1. 

 Low Back

In evaluating any disability on the basis of limitation of motion, VA must consider the actual degree of functional impairment imposed by pain, incoordination, weakness, fatigue, and lack of endurance with repetitive motion. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). 

The criteria for rating disc disease and disabilities of the spine were revised while the appeal was pending (effective September 23, 2002 and September 26, 2003, respectively). For the period prior to September 23, 2002, only the criteria under 38 C.F.R. § 4.71a (2002) are applicable. For the period of September 23, 2002, to September 26, 2003, the criteria under both 38 C.F.R. § 4.71a (2002) and (2003) are applicable. Since September 26, 2003, both prior incarnations of the criteria and the current criteria under 38 C.F.R. § 4.71a (2011) may be applied. In no case, however, may an evaluation be reduced based on a change in the applicable criteria, unless actual improvement is shown. 38 C.F.R. § 3.951(a).

Code 5285 provided that for residuals of vertebral fractures, abnormal mobility requiring neck brace, where there is no spinal cord involvement, a 60 percent rating was assigned. A 100 percent rating was assigned when the spinal cord was involved, the Veteran was bedridden, or required long leg braces. In all cases not falling within those criteria, ratings were assigned based on limitation of motion or ankylosis. In such cases, a 10 percent rating was added to the evaluation when demonstrable deformity of the vertebrae was shown. 38 C.F.R. § 4.71a, Code 5285 (2002).

Ankylosis of the spine was rated under Code 5286. Fixation in a favorable angle was rated 60 percent disabling, while unfavorable ankylosis was rated 100 percent disabling. 38 C.F.R. § 4.71a, Code 5286 (2002).

Under 38 C.F.R. § 4.71a, Code 5293 (2002) a 10 percent rating was assigned for mild intervertebral disc syndrome (IVDS). A 20 percent rating was in order for a moderate IVDS, with recurring attacks. A 40 percent rating required a severe IVDS with recurring attacks with intermittent relief. For pronounced IVDS, with persistent symptoms compatible with sciatic neuropathy with characteristic pain and demonstrable muscle spasm, absent ankle jerk, or other neurological findings appropriate to the site of the diseased disc, and little intermittent relief, a 60 percent evaluation was assigned. 38 C.F.R. § 4.71a, Code 5293 (2002).

Alternatively, a lumbar spine disability could have been evaluated as lumbosacral strain under Code 5295. Slight subjective symptoms were noncompensable. Characteristic pain on motion was rated 10 percent disabling. With muscle spasm on extreme forward bending or unilateral loss of lateral spine motion in a standing position, a 20 percent evaluation was assigned. A 40 percent rating was warranted for severe strain, with listing of the whole spine to the opposite side, positive Goldthwaite's sign, marked limitation of forward bending when standing, loss of lateral motion with arthritic changes, narrowing or irregularity of joint spaces, or some of the preceding with abnormal mobility on forced motion. 38 C.F.R. § 4.71a, Code 5295 (2002).

Limitation of motion of the lumbar spine was rated under Code 5292. Slight limitation was 10 percent disabling, moderate limitation was 20 percent disabling, and severe limitation was 40 percent disabling. 38 C.F.R. § 4.71a, Code 5292 (2002).

Code 5293 was revised effective September 23, 2002; Codes 5285, 5286, 5292 and 5295 were unchanged. The new Code 5293 criteria provided that IVDS should be evaluated either on the total duration of incapacitating episodes over the past 12 months, or by combining under 38 C.F.R. § 4.25 separate evaluations of its chronic orthopedic and neurologic manifestations along with evaluations for all other disabilities, whichever method results in the higher rating. The revised Code 5293 provided that an evaluation of 10 percent was assigned for incapacitating episodes lasting at least one week but less than two. A 20 percent rating was warranted for intervertebral disc syndrome with incapacitating episodes having a total duration of at least two weeks but less than four weeks during the past 12 months. An evaluation of 40 percent was warranted for intervertebral disc syndrome with incapacitating episodes having a total duration of at least four weeks but less than six weeks during the past 12 months. For incapacitating episodes lasting at least six weeks over the prior 12 months, a 60 percent evaluation was assigned.

Note (1) to revised Code 5293 provided that, "an incapacitating episode" is a period of acute signs and symptoms due to intervertebral disc syndrome that requires bed rest prescribed by a physician and treatment by a physician. Note (2) provides: When evaluating on the basis of chronic manifestations, evaluate orthopedic disabilities using criteria for the most appropriate orthopedic diagnostic code or codes. Evaluate neurologic disabilities separately using criteria for the most appropriate neurologic diagnostic code or codes. 38 C.F.R. § 4.71a, Code 5293 (2003).

The criteria for rating other disabilities of the spine were again revised effective September 26, 2003; this included a changing of Diagnostic Codes. Codes 5292, 5293, and 5295 were eliminated. Code 5237 now applies to lumbosacral strain. No separate Code is provided for limitation of motion. IVDS was renumbered as Code 5243, which provides that IVDS is evaluated either under the General Rating Formula for Diseases and Injuries of the Spine or under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes, whichever method results in the higher rating when all disabilities are combined under 38 C.F.R. § 4.25. 38 C.F.R. § 4.71a. The actual criteria under the Formula for Rating Intervertebral Disc Syndrome Based on Incapacitating Episodes are the same as were effective under Code 5293 on September 26, 2003.

Under the General Rating Formula for Diseases and Injuries of the Spine, applicable under both Codes 5237 and 5243, the disability is evaluated with or without symptoms such as pain (whether or not it radiates), stiffness, or aching in the area of the spine affected by residuals of injury or disease. A 10 percent evaluation is assigned for forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees or, combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees or, muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or, vertebral body fracture with loss of 50 percent or more of the height. A 20 percent rating requires thoracolumbar spine forward flexion greater than 30 degrees but not greater than 60 degrees; or, the combined range of motion of the thoracolumbar spine not greater than 120 degrees; or, muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis. A 40 percent rating is warranted for forward flexion of the thoracolumbar spine 30 degrees or less, or for favorable ankylosis of the entire thoracolumbar spine. Unfavorable ankylosis of the thoracolumbar spine warrants a 50 percent evaluation, and unfavorable ankylosis of the entire spine is rated 100 percent disabling. 38 C.F.R. § 4.71a (2011).

For VA compensation purposes, normal forward flexion of the thoracolumbar spine is zero to 90 degrees, normal extension is zero to 30 degrees, normal left and right lateral flexion is zero to 30 degrees, and normal left and right lateral rotation is zero to 30 degrees. Note 2 following the General Rating Formula. 38 C.F.R. § 4.71a (2011).

The Board observes the words "moderate" and "severe" are not defined in the VA rating schedule. Rather than applying a mechanical formula, the Board must evaluate all of the evidence to the end that its decision is "equitable and just." 38 C.F.R. § 4.6. Although the criteria under Diagnostic Codes 5290 through 5292 (2002) were less defined that the current criteria, guidance can be obtained from the amended regulations. In adopting specific ranges of motion to define what is normal, VA stated that the ranges of motion were based on the American Medical Association Guides to the Evaluation of Permanent Impairment, 2nd ed., (1984), which is the last edition of the Guides that measured range of motion of the spine using a goniometer. See Supplementary Information, 67 Fed. Reg. 56509, 56512 (Sept. 4, 2002). In other words, even though pre-2003 regulations did not define normal range of motion for the spine, the current definition is based on medical guidelines in existence since 1984, and the Board can consider the current ranges of motion to rating spine disabilities under the old criteria.

The Board first finds that the pre-2002 rating criteria are more favorable to the Veteran, and must be applied here. Under the newer criteria, the only way to achieve an evaluation in excess of 60 percent for the low back is to show unfavorable ankylosis of the entire spine. As is discussed below, there is no showing or allegation of ankylosis of the spine or its functional equivalent, and hence no higher rating could be assigned. Further, the Veteran is not service-connected for the cervical spine segment, and hence such cannot be used to support an evaluation.

The Board has considered that under the newer criteria, the Veteran could receive additional ratings for neurological manifestations of his low back disability, which could conceivably result in a combined evaluation for the constellation of low back symptomatology higher than 60 percent. However, review of the medical evidence of record fails to demonstrate any consistent, chronic complaints of such neurological manifestations. At best, there are subjective complaints of intermittent pains of the left leg and testicles, which were not corroborated on examinations. Examiners actually found subjective complaints to often be inconsistent with objective findings. 

Accordingly, rating under the newer criteria is not to the Veteran's advantage.

Under the older criteria, the Veteran must establish either unfavorable ankylosis of the spine (Code 5286), or spinal cord involvement, bedridden status, or a need for long leg braces (Code 5285). Because the current 60 percent rating under Code 5293 is not based upon limitation of motion, the addition of a 10 percent rating to it is not available. 38 C.F.R. § 4.71a, Code 5285 (2002).

None of these conditions are shown. The Veteran is not now and has never been bedridden. He in fact worked full time up until February 2007 in a physically active job, and while he has asserted a fair degree of physical limitation, he has not complained he is restricted to bed. No examiner or treating doctor has even found ankylosis of any spinal segment; there is limitation of motion of the low back, but there remains some motion. The spine is not fixed or fused. Similarly, no cord involvement is shown on medical examination or evaluation for treatment. At worse, the Veteran has been found to have disc involvement which can at times impinge on nerves and cause pain or numbness and tingling, but the spinal cord itself is intact and undamaged. Finally, no leg braces are required. The Veteran does wear knee braces, but for two reasons these fail to qualify him for an increased low back disability evaluation. First, they are for impairment of the knees, and not the back; they are unrelated to the condition being assessed. Second, even if they were associated with back symptoms, they are not long leg braces. They impact only a small portion of the lower extremities, and not the complete limb, as is envisioned by the rating criteria. 

Consideration has been given to the possibility of assignment of an extraschedular evaluation under 38 C.F.R. § 3.321. Extraschedular consideration involves a three step analysis. Thun v. Peake, 22 Vet. App. 111 (2008).

First, a determination must be made as to whether the schedular criteria reasonably describe a veteran's disability level and symptomatology. Id. At 115. If the schedular rating criteria do reasonably describe a veteran's disability level and symptomatology, referral for extraschedular consideration is not required and the analysis stops. Id.

If the schedular rating criteria do not reasonably describe a veteran's level of disability and symptomatology, a determination must be made as to whether an exceptional disability picture includes other related factors, such as marked interference with employment and frequent periods of hospitalization. Id. At 116.

If an exceptional disability picture including such factors as marked interference with employment and frequent periods of hospitalization exists, the matter must be referred to the Under Secretary for Benefits or the Director of the Compensation and Pension Service for the third step of the analysis, determining whether justice requires assignment of an extraschedular rating. Id.

The Board also notes that a Veteran may be awarded an extraschedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. Johnson v. McDonald, 762 F.3d 1362 (2014). 

Here, the rating criteria are adequate, and fully address the Veteran's complaints related to his low back disability, including pain, and limited movement and function. These affects, including the impacts reported from neurological impairments, are contemplated by one or more of the Codes considered for application here. Therefore, no extraschedular evaluation is warranted.

Accordingly, no rating in excess of 60 percent for a lumbosacral spine disorder is warranted.

 Left Knee

The Veteran had been previously denied service connection for a left knee disability, and so until the claim was reopened by the Board in a December 2004 decision, the duty to examine the Veteran was not triggered. 38 C.F.R. § 3.159(c)(4)(iii). Consequently the first examination of the appellate period, dating from November 1998, comes in April 2005. Prior to that date, treatment records document regular complaints of serious left knee pain and functional limitations. Treating doctors noted pain with use and (unmeasured) limitations of flexion. Complaints of locking and effusion are not evident. The Veteran underwent surgery in November 2000 and February2002, for a lateral meniscal tear and ACL partial tear. Doctors noted that the knee remained symptomatic even after surgeries. 

At the April 2005 examination, the Veteran complained of pain, locking, and effusion in the left knee. He described a giving way sensation, although objective testing did not show any instability in any plane. Flexion of the knee was to 90 degrees, and extension lacked 20 degrees, when impairment due to pain was considered. The Veteran reported that he made more pain and functional limitation with use, especially with activity liked prolonged walking.

In June 2007, the Veteran again reported pain, locking, and effusion in the left knee, as well as a giving way sensation. Activities like squatting, climbing stairs, and extended periods of walking were problematic. Physical examination showed full extension, but flexion was limited to 112 degrees. The examiner noted complaints of pain with activity like climbing stairs and walking distances, but he did not indicate that these caused any additional functional impairment. Pain was the major limiting factor. The examiner did not perform repetitive motion testing. Although the Veteran complained of instability and wore a knee brace to correct this, there was no objective evidence of any instability in the joint on testing.

The October 2009 examination again showed complaints of pain, locking, and effusion in the left knee, as well as a giving way sensation and instability. Flexion was again to 110 degrees, limited by pain, and extension was full to 0 degrees. Repeated movement did not cause additional functional impairment, but the Veteran reported prolonged walking and driving, or going up and down stairs, caused increased problems. The stability of the left knee was not fully tested, as the Veteran was apprehensive about medial and lateral movement. Other planes were tested and found stable, however. 


The Veteran was examined most recently in March 2013. The examiner found no objective evidence of locking or effusion, but the joint was painful. Flexion was to 100 degrees, limited by pain, and extension was full and complete. There was no change with repetitive motion. The left knee joint was stable when tested in all planes. Prolonged activity would not be possible due to the left knee problems. 

There are numerous Diagnostic Codes which are potentially applicable to evaluation of a knee disability. Code 5256 is utilized for evaluation of ankylosis or the functional equivalent; as there remains some motion of the left knee, this Code is not applicable here. Also, while evaluations under Code 5262 may be based in part upon knee disability, the underlying impairment must be related to damage to the bones of the lower leg. No tibia or fibula impairment is shown here. 38 C.F.R. § 4.71a. 

Code 5257 evaluates disabilities of the knee based on the degree of subluxation and instability of the joint. Slight impairment merits a 10 percent evaluation. Moderate impairment warrants 20 percent. A 30 percent evaluation is assigned where the impairment is severe. 38 C.F.R. § 4.71a, Code 5257. While the Veteran reports a giving way sensation, repeated testing shows that the left knee joint is in fact fully stable. There is no subluxation. Accordingly, at no time is a compensable rating under Code 5257 warranted.

Codes 5258 and 5259 evaluate impairment of the semilunar cartilage, or menisci. Under Code 5258, frequent episodes of pain, locking, effusion are rated 20 percent disabling. Under Code 5259, post-surgical meniscal problems that remain "symptomatic" are rated 10 percent disabling. 38 C.F.R. § 4.71a. Simultaneous evaluations under Codes 5258 and 5259 are not possible, as both address meniscal injuries and the symptoms thereof; because of this overlap, rating under both would constitute prohibited pyramiding. 38 C.F.R. § 4.14. At all examinations save the most recent, the Veteran complained of pain, locking, and effusion in the left knee joint. The pain was constant, and when asked, he described the other symptoms as being present fairly frequently. In light of the definitive evidence of a meniscal injury, and the consistent and credible lay reports of symptoms which are not contradicted by the medical evidence (and are in fact often supported by clinical findings), a 20 percent evaluation under Code 5258 is warranted throughout the appellate period. While the most recent evidence does not endorse these symptoms, the overall disability picture does include them, and given the progression of symptoms and complaints, sustained improvement is not considered likely. The change in findings is more likely attributable to the change in examination worksheets over the two decades the claim has been pending.

For limitation of motion, there are three potentially applicable Diagnostic Codes. In evaluating any disability on the basis of limitation of motion, VA must consider the actual degree of functional impairment imposed by pain, incoordination, weakness, fatigue, and lack of endurance with repetitive motion. 38 C.F.R. §§ 4.40, 4.45, 4.59; DeLuca v. Brown, 8 Vet. App. 202 (1995). 

Code 5260 assigns evaluations based on limitation of flexion. Limitation to 60 degrees merits a noncompensable, or 0 percent, evaluation. A 10 percent evaluation is assigned for limitation to 45 degrees. Limitation to 30 degrees flexion warrants a 20 percent evaluation, and a 30 percent evaluation is assigned for limitation to 15 degrees of flexion. 38 C.F.R. § 4.71a, Code 5260. The greatest measured limitation of flexion was to 90 degrees, well outside the compensable range. While extended use or activity like stair climbing may increase pain symptoms, no measured increase in functional impairment was noted. Accordingly, while there is consistent and chronic limitation of flexion, it does not rise to a level which is compensable under Code 5260.

Limitation of extension is rated under Code 5261. A noncompensable evaluation is assigned for limitation to 5 degrees. A 10 percent evaluation is for assignment when extension is limited to 10 degrees. Fifteen degrees limitation merits a 20 percent evaluation, and 20 degrees merits a 30 percent evaluation. Limitation to 30 degrees is evaluated as 40 percent disabling, and limitation to 45 degrees warrants a 50 percent evaluation. 38 C.F.R. § 4.71a, Code 5261. On the April 2005 examination, limitation of extension was noted. While movement was possible for the whole of the plane, pain began at 20 degrees, and hence that is the limitation of motion. Such would correspond to a 30 percent rating. However, this is the sole finding of any limitation of extension. Treatment records before and after, and repeated examination findings, do not duplicate such extensive limitation. Consequently, the Board finds that this is an anomaly, out of line with the overall disability picture. The repeated and consistent findings showing full and complete extension are more representative of the Veteran's actual functional capacity, and therefore no compensable evaluation is assignable under Code 5261.

Because neither joint specific Code provides a compensable rating, Codes 5010 and 5003 must be considered. Code 5003, for degenerative arthritis, provides that degenerative arthritis that is established by X-ray findings will be rated on the basis of limitation of motion under the appropriate diagnostic codes for the specific joint or joints involved, as discussed above. When there is no limitation of motion of the specific joint or joints that involve degenerative arthritis, Diagnostic Code 5003 provides a 20 percent rating for degenerative arthritis with X- ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups, with occasional incapacitating exacerbations, and a 10 percent rating for degenerative arthritis with X-ray evidence of involvement of 2 or more major joints or 2 or more minor joint groups. 38 C.F.R. § 4.71a, Code 5003. 

Note (1) provides that the 20 pct and 10 pct ratings based on X- ray findings will not be combined with ratings based on limitation of motion. Note (2) provides that the 20 percent and 10 percent ratings based on X-ray findings will not be utilized in rating conditions listed under Diagnostic Codes 5013 to 5024, inclusive. 38 C.F.R. § 4.71a, Code 5003. 

When there is some limitation of motion of the specific joint or joints involved that is noncompensable (0 percent) under the appropriate diagnostic codes, Diagnostic Code 5003 provides a rating of 10 percent for each such major joint or group of minor joints affected by limitation of motion, to be combined, not added, under Diagnostic Code 5003. Limitation of motion must be objectively confirmed by findings such as swelling, muscle spasm, or satisfactory evidence of painful motion. 38 C.F.R. § 4.71a, Code 5003. These same criteria are applied for traumatic arthritis under Code 5010, which refers the evaluator to Code 5003.

Separate ratings may be assigned for knee disability under Diagnostic Codes 5257 and 5003 where there is x-ray evidence of arthritis in addition to recurrent subluxation or lateral instability. The symptomatology supporting the evaluations does not overlap; limitation of motion and stability are distinct from each other. See generally VAOPGCPREC 23-97 and VAOPGCREC 9-98. Further, VAOPGCPREC 9-04 provides that where a claimant has both limitation of flexion and limitation of extension of the same leg separate ratings under diagnostic codes 5260 and 5261 are warranted to adequately compensate for functional loss associated with injury to the leg. By extension, evaluations under Code 5257 and either or both Code 5260 and Code 5261 are permissible, as each of the three codes measures different criteria. By contrast, an evaluation under Code 5003 may not be combined with one under Code 5260 or Code 5261; Code 5003 does not specify the plane of limited motion considered, and so evaluation under either of the other limitation of motion Codes forecloses the possibility of multiple evaluations. See generally VAOPGCPREC 23-97 and VAOPGCREC 9-98; 38 C.F.R. § 4.14.

Similarly, Code 5258 or Code 5259 may be applied simultaneously with the limitation of motion Codes, as the signs and symptoms upon which the ratings are based do not overlap. See generally VAOPGCPREC 23-97 and VAOPGCREC 9-98; 38 C.F.R. § 4.14.

Consistent with the above, the Veteran is currently rated for limitation of motion of the left knee under Code 5099-5010. The hyphenation of the Code indicates that the exact diagnosed condition is not listed, and the rating is applied by analogy to a closely related condition that best approximates the disability picture. 38 C.F.R. §§ 4.20, 4.27. The RO determined that while there was limitation of motion, it did not rise to a compensable level under Code 5260 or Code 52621. However, as there is clear x-ray evidence of DJD of the left knee joint, a 10 percent rating is still assignable. 38 C.F.R. § 4.71a, Codes 5003, 5010. The Board agrees, and finds that throughout the appellate period, no evaluation in excess of the currently assigned 10 percent is warranted for the limitation of motion manifestations.

However, as is also discussed above, the Veteran has shown additional left knee disability manifestations throughout the appellate period which warrant evaluation under Code 5258. Because the criteria for limitation of motion and for meniscal injury do not overlap, they may be applied simultaneously, and hence an additional 20 percent rating is warranted for the meniscus-related disability. 




ORDER

An initial evaluation in excess of 60 percent for a lumbosacral spine disorder is denied.

An initial evaluation in excess of 10 percent for left knee DJD with limitation of flexion is denied.

A separate initial 20 percent rating for left knee meniscal damage is granted.




______________________________________________
MICHAEL A. PAPPAS
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs